S.W. CALIFORNIA PRODUCTION
CREDIT ASSOCIATION, Plaintiff

v.

THE VESSEL CONQUISTADOR, its fish
products, fish cargo, freight, masts,
boats, anchors, cables, chains,
rigging, tackle, furniture, engines, and all
other necessaries appertaining thereto,
Defendant in Rem; and

CONQUISTADOR, Ltd., CONQUISTADOR
VENTURES, Inc., STEVEN J. RIBEIRO,
BEVERLY A. RIBEIRO, STEVE RIBEIRO
MANAGEMENT CORPORATION, and
STAR-KIST SAMOA, Inc.,
Defendants in Personam;

JACKEL, Inc., dba BIG BEN SHIP
STORES, Intervenor

High Court of American Samoa
Trial Division

CA No. 69-83

April 7, 1989

Before REES, Associate Justice.

Counsel: For Plaintiff, Roy J.D. Hall, Jr.
For the Conquistador and Ribeiro
Defendants, John L Ward II
For Defendant Star-Kist, Togiola T.A.
Tulafono
For Intervenor, L. Su'esu'e Lutu

On Request for Approval of Stipulation:

The vessel Conquistador was arrested by the Marshal of the High Court in 1983 pursuant to the complaint in admiralty filed by plaintiff S.W. (Southwest?) California Production Credit Association.

On September 20, 1983, pursuant to a stipulation among plaintiff and the various defendants, a receiver was appointed. The marshal relinquished possession of the vessel, and counsel for the owners of the vessel "accept[ed] full possession of the vessel . . . for . . . the appointed receiver." According to the stipulation of the parties, which was incorporated into an order of the Court, the vessel was to be "deemed . . . in custodia legis" during the receivership. The stipulation also provided that "[n]othing in this stipulation and order shall be construed to create any ranking or priority of any liens against the Vessel . . . other than that . . . which would exist but for the provisions of this stipulation and order."

On November 15, 1983, subsequent to the stipulated order and release of the vessel, the Court granted a motion to intervene by Jackel, Inc., a vendor of ship supplies and materials. The order provided that intervenor's lien would be junior to that of plaintiff.

The receivership has now been in existence for almost six years. During this time the vessel has been regularly engaged in fishing. As far as the Court can discern from the occasional reports of the receiver, proceeds from fish sales have been divided among the various parties and other creditors in accordance with the terms of the 1983 stipulation.

Plaintiff and defendants now request the Court to approve a stipulation by which plaintiff (or, more precisely, an entity into which the plaintiff has merged) will lend $110,000 to the receivership

8

and to the owners of the vessel. The stipulation specifies that the loan shall give rise to a lien, and that the lien "shall be subordinate and secondary only to the preferred ship's mortgage of the plaintiff . . . ."

The Court has no objection to the loan. The Court is reluctant, however, to issue an order affecting the rights of absent parties without affording them prior notice and opportunity to be heard. One such party is the intervenor, who has apparently not received notice of the stipulation. (It also would appear from a notation in the Court's voluminous file on this case that some other party, represented by counsel Aviata Fa'alevao, has entered an appearance at some time during the six years the action has been pending. The Court is at present unable to determine who this party might be.)

Even more importantly, the proposed order would purport to subordinate all liens on the vessel ---- including, presumably, the rights of crewmen and suppliers on future fishing voyages--- to the rights of the proposed lender. This may or may not be in accordance with what would otherwise be the law. When a vessel is actually or constructively in the possession of the Court, liens do not ordinarily accrue in favor of crewmen or other suppliers of goods and services to the vessel. See Gray, Cary, Ames & Frye v. HGN Corporation, 6 A.S.R.2d 64 (1987); Putnam v. Lower, 236 F.2d 561 (9th Cir. 1956). This rule may not apply, however, to a vessel placed in custodia legis but subsequently "allowed to ply the harbors in furtherance of its trade without restriction." Gray, Cary, Ames & Frye, supra, 6 A.S.R.2d at 71.

> It would be grossly unfair to permit the [mortgagee], by proceedings that were essentially ex parte as to [crew members on voyages undertaken while the vessel is in custodia legis], to put the ship on the high seas on whatever terms it might choose, as a sort of floating credit card payable to the bearer . . . .

Id., quoting Northwest Marine v. United States, 307 F.2d 541 (9th Cir. 1962).

Notwithstanding the stipulated order that the Conquistador shall be "deemed" in custodia legis

9

during the present receivership, it is unclear whether --- with respect to those who were not parties to the stipulation and had no notice of it --- the facts and circumstances of this receivership are such as to render the vessel within or without the Court's custody. Unlike the vessel at issue in Gray, Cary, Ames & Frye, which embarked on a single fishing expedition with the express and specific approval of the Court, the Conquistador appears to have been allowed to "ply the seas in her usual custom." Id., 6 A.S.R.2d at 73. We note also that the stipulated receivership order, while providing that the vessel should be "deemed" in custodia legis, nevertheless purported not to "create any ranking or priority of any liens against the Vessel . . . other than that . . . which would exist but for the provisions of this stipulation and order." This provision would arguably preserve the rights of those who, in the absence of the stipulation that the vessel be deemed in the constructive possession of the Court, would have obtained liens on the vessel during the period of receivership.

Assuming the status of the Conquistador to be such that maritime liens may arise in favor of crewmen, suppliers, and others during the receivership, and assuming further that some or all of these liens would be superior to those of the proposed lender, it is not clear that the Court has the power to alter the rank or priority of such liens by approving an ex parte stipulation to which the lienholders were not parties. On the contrary assumption --- that no valid liens could arise during the receivership, or that any liens that did arise would be subordinate to that of the proposed lender --- no Court order is necessary to effectuate the stipulated priority. Nor is it altogether clear, assuming the vessel to be in custodia legis so that no lien can be created by operation of law, that a Court order purporting to create or recognize a lien on behalf of the proposed lender would have the desired legal effect.

While the Court feels compelled to notice the existence of these questions, it would not be appropriate to resolve them without benefit of any briefing and argument the parties might wish to offer. Accordingly, the stipulation is approved on the following conditions:

10

1) Insofar as Court approval is necessary for the loan from Farm Credit Services to the receiver, such approval is granted.

2) Insofar as the Court's permission is necessary to allow the loan and accompanying mortgage to give rise to a lien against the vessel, such permission is granted.

3) Insofar as the rights of the parties to the stipulation are concerned, the loan and accompanying mortgage shall give rise to a lien that shall be subordinate and secondary only to the preferred ship's mortgage held by plaintiff. (In the event it should be held that this Court has no power to create or recognize such a lien, then the parties to the stipulation should be understood as stipulating that any rights they may have in or against the vessel, its fixtures, its proceeds, or its cargo (with the single exception of plaintiff's rights arising from its preferred ship mortgage) shall be subordinate to the contractual right of Farm Credit Services arising from this loan; and the Court approves this stipulation and incorporates it into its order).

4) The Court expresses no opinion on whether maritime liens can be created during the receivership with or without the permission of the Court.

5) The Court neither expresses any opinion on the rights of any person who is not a party to the stipulation nor purports to alter the rights any such person would have in the absence of this order.

It is so ordered.